UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DENNIS GOSNELL and DIANA GOSNELL, | ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No.: 3:04-CV-573 (VARLAN/GUYTON) |
| MONROE COUNTY, DOUG WATSON, in his official capacity, and JOE McDOWELL, in both his official and individual capacities, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

This civil rights action is before the Court on the defendants' Motion for Summary Judgment. [Doc. 17]. The plaintiffs have not responded to the defendants' motion and the time for doing so has passed. *See* L.R. 7.1(a), 7.2.

The Court has carefully considered the pending motion along with the defendants' supporting brief, affidavits, and the relevant pleadings. For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 17] will be **GRANTED**.

## I.   Relevant Facts

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The plaintiffs' complaint [Doc. 1] alleges violations of 42 U.S.C. § 1983, as well as negligence under Tennessee law, for events which occurred while the plaintiff was housed in the Monroe County Jail ("MCJ") in 2004. The plaintiff's wife, Diana Gosnell ("Mrs. Gosnell") further alleges loss of consortium. [*Id.* at ¶ 32]. On April 27, 2004, plaintiff Dennis Gosnell ("Mr. Gosnell") was sentenced to ten days imprisonment for a DUI offense. [*Id.* at ¶2]. Mr. Gosnell began serving his sentence in the MCJ on May 7, 2004. [Doc. 17, Ex. 1 at p. 5]. Mr. Gosnell spent the night of May 7 sleeping on the floor of a hallway in the MCJ, but was subsequently moved to a bunk in cell block six. [*Id.* at pp. 7-8]. On the night of May 14, 2004, Mr. Gosnell was occupying the top bed of a double bunk-bed, with another inmate, Charles "Dino" Mason ["Mason"], occupying the bottom bunk. [Doc. 1 at ¶ 5; Doc. 17, Ex. 1 at p. 9]. Mason soon began kicking Mr. Gosnell's bunk from underneath and also attempted to set Mr. Gosnell's sheets on fire. [Doc. 1 at ¶¶ 6-7; Doc. 17, Ex. 1 at p. 9]. Mr. Gosnell, still laying in the top bunk, then swung his laundry bag at Mason in an attempt to stop Mason's kicking. [Doc. 17, Ex. 1 at p. 9]. Mason then pulled Mr. Gosnell from the top bunk onto the floor and began beating and kicking Mr. Gosnell in the head and stomach. [*Id.* at p. 9]. At some point Officers Beckman, Sparks, and Green intervened and Mr. Gosnell was placed in a different cell. [Doc. 17, Ex. 2 at p. 3]. As a result of the altercation, Mr. Gosnell sustained a small cut to his lower lip and scratches and bruising to his arms. [*Id.* at p. 5]. Mr. Gosnell was released from the MCJ on May 16, 2004, at which point Mr. Gosnell

went to the Blount Memorial Hospital Emergency Room, where he was diagnosed with bruises, a concussion, and misplaced teeth.[1]  [Doc. 18 at p. 4].

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing there is no genuine issue of material fact lies upon the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).  The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Id.* at 249.  Thus, "[t]he inquiry performed is the threshold inquiry of

---

[1] No medical records or other evidence has been entered into the record as to Mr. Gosnell's injuries.

determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

It should be noted that the plaintiffs have failed to respond to the defendants' motion for summary judgment and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. Therefore, the record before the Court consists of the plaintiff's complaint [Doc. 1], the affidavit of Joe McDowell [Doc. 22, Attach. 2], and excerpts from the depositions of Mr. Gosnell [Doc. 17, Ex. 1] and Monroe County Sheriff's Department Sergeant Olwin Norman [Doc. 17, Ex. 2]. The plaintiffs' complaint, even if accepted as true for purposes of summary judgment, consists of allegations which are not acceptable proof under Rule 56. Mere notice pleading is not sufficient to defeat a well-pled summary judgment motion. *See Garth v. University of Kentucky Medical Center*, No. 92-5177, 1992 U.S. App. LEXIS 14677, at *3-4 (6th Cir. June 16, 1992) ("To survive a motion for summary judgment, [the plaintiff] was required to do more than rest on her pleadings; she was required to demonstrate that a genuine issue for trial existed."); *Teamsters Local Union No. 486 v. Andersen Sand and Gravel Co.*, No. 82-1124, 1983 U.S. App. LEXIS 13044, at *6 (6th Cir. May 11, 1983) ("Where the district court has afforded a party opposing summary judgment under Rule 56 an opportunity to set forth specific facts showing there is a genuinely disputed factual issue for trial and that opportunity has been ignored, summary judgment is appropriate if the movant has carried his burden of proof."). However, while the plaintiffs have not responded to the motion for summary

4

judgment, the Court will still analyze the record to determine if any genuine issues of material fact exist in this matter.

## III. Analysis

The plaintiffs contend that the defendants, through their deliberate indifference, violated Mr. Gosnell's constitutional rights by failing to protect Mr. Gosnell from Mason and by failing to provide Mr. Gosnell with prompt medical attention. The plaintiffs allege that the defendants' actions were in violation of Mr. Gosnell's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. Because Mr. Gosnell was incarcerated at the time of the events in question, Mr. Gosnell's Eight and Fourteenth Amendment rights are actually at issue,[2] and the Court will proceed as if the plaintiffs had invoked the proper constitutional basis for their § 1983 claim. The plaintiffs further contend that the defendants are liable for negligence under state law for their negligent training and supervision of the officers involved in the care and custody of Mr. Gosnell while at the MCJ. Mrs. Gosnell also alleges that the defendants are liable for her loss of consortium.

The defendants seek judgment in their favor on multiple grounds, including that: (1) the plaintiffs cannot prove that the defendants had actual knowledge that Mason posed a threat to Mr. Gosnell, nor that they exhibited deliberate indifference to that danger; (2) the plaintiffs cannot produce facts sufficient to show that defendant Joe McDowell

---

[2]*See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment").

("McDowell") is subject to supervisory liability under § 1983; (3) Mrs. Gosnell cannot state a claim upon which relief can be granted with respect to her loss of consortium claim; (4) even if the defendants did violate Mr. Gosnell's civil rights, the plaintiffs cannot prove that the defendants were on notice that their actions were in violation of Mr. Gosnell's clearly established civil rights; (5) defendants Monroe County and Doug Watson ("Watson") are entitled to summary judgment because no policy or custom of Monroe County was the moving force behind any alleged violation of Mr. Gosnell's constitutional rights; and (6) it would be inappropriate to assert pendant jurisdiction over the state law claims in this case.

**A.    42 U.S.C. § 1983**

42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. It is well settled that § 1983 by its terms does not create any substantive rights but rather "merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on their § 1983 claims, the plaintiffs "must establish that a person acting under color of state law deprived [Mr. Gosnell] of a right secured by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). In other words, the plaintiffs must first show that Mr. Gosnell has suffered a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005).

The Eighth Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. In discussing when a prisoner's conditions of confinement rise to the level of a civil rights violation, the United States Supreme Court has held that:

> [after incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). The *Wilson* Court went on to hold that a prison official's wanton behavior must rise to the level of deliberate indifference for the official to be culpable of civil rights violations. *Id*. at 303. In other words, the plaintiffs must show that the defendants were deliberately indifferent to Mr. Gosnell's safety and medical needs, which requires a showing that the defendants knew of and disregarded a substantial risk of serious harm to plaintiff's health and safety. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

### 1.     McDowell, Individual Capacity

Viewing the facts in the light most favorable to plaintiff, there is simply nothing in the record suggesting that McDowell, in his individual capacity, knew of and disregarded a substantial risk of serious harm to Mr. Gosnell's health and safety. McDowell states in his

7

affidavit that he does not recall any dealings with Mr. Gosnell, nor does he recall directing that Mr. Gosnell be placed in any specific cell, nor was he even aware that Mr. Gosnell had been placed in a specific cell block. [Doc. 22, Attach. 2 at ¶ 3]. McDowell further states that he was not aware of any danger that Mason might have posed to Mr. Gosnell. [*Id*.] McDowell states that he is unaware of a pattern of incidents indicative of a failure of the staff of the MCJ to provide medical treatment to prisoners when needed. [*Id*. at ¶ 4]. The plaintiffs have provided no evidence to dispute McDowell's affidavit. Although the Court draws all justifiable inferences in the plaintiffs' favor for the purposes of summary judgment, the plaintiffs still bear the burden of presenting specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because the plaintiffs have failed to present any facts regarding McDowell's deliberate indifference towards Mr. Gosnell's health and safety, the plaintiffs have failed to carry their burden to show that McDowell was personally involved in and liable for a violation of Mr. Gosnell's civil rights.

Nor have the plaintiffs carried their burden in showing that McDowell would be liable under a theory of supervisory liability. To succeed in a showing of supervisory liability, the plaintiffs must show that McDowell directly participated in the alleged violations or that he was indirectly responsible because of negligent supervision.

Under a theory of direct participation, the plaintiff has the burden of showing that the supervisor either encouraged the specific incident of misconduct or otherwise directly participated in the conduct that is alleged to have violated the constitutional rights of the

8

plaintiff. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As discussed above, McDowell's affidavit indicates that he did not even know Mr. Gosnell was being housed in cell block six, much less that McDowell was aware of, took part in, or encouraged any violation of Mr. Gosnell's civil rights. Therefore, the plaintiffs can not succeed under the direct participation theory of supervisory liability.

Under a theory of supervisory liability through indirect responsibility, the plaintiffs must show that the "[supervisor's] conduct amounted to a tacit authorization of the [alleged] abuse." *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). However, again, all the evidence of record indicates that McDowell was not aware of the incident between Mason and Mr. Gosnell, nor is there any evidence that McDowell knew Mason was a danger, nor that McDowell knew of any sort of systematic failure on the part of the staff of the MCJ in protecting the health and safety of the prisoners. Nor can plaintiff succeed on a claim that McDowell failed to properly train his subordinates, because the only evidence of record indicates that the employees of the MCJ received regular training in both prison operation and basic first aid. [*See* Doc. 22, Attach. 2 at ¶¶ 2, 4].

The plaintiffs have failed to carry their burden in showing that there is a genuine issue of material fact as to whether McDowell, in his individual capacity, violated Mr. Gosnell's civil rights. The parties do not dispute that an incident occurred between Mason and Mr. Gosnell, but there is simply no proof that it rose to the level necessary to indicate a violation

of Mr. Gosnell's civil rights by McDowell.[3] Therefore, the defendants' motion for summary judgment will be granted with respect to the § 1983 action against McDowell in his individual capacity.

**2.      Monroe County Defendants**

The plaintiffs also argue that defendants Monroe County, Watson, in his official capacity, and McDowell, in his official capacity, are liable under § 1983 for the alleged violation of Mr. Gosnell's civil rights. Initially, the Court notes that the suits against Watson and McDowell in their official capacity are essentially repetitions of the claims against Monroe County. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) ("A section 1983 action against a city official in his or her official capcity is treated as an action against the city entity itself."). Therefore, the Court will only address the claims against Monroe County, with the same analysis applying to the official capacity claims against Watson and McDowell.

In order to state a claim against a governmental entity under § 1983, the plaintiffs must show that a policy or custom attributable to the governmental entity resulted in a violation of Mr. Gosnell's constitutional rights. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). "A municipality may be liable under § 1983 for actions of its authorized policymakers 'where - and only where - a deliberate choice to follow a course of action is

---

[3]Because the plaintiffs have failed to carry their burden in showing that a civil rights violation occurred, the Court need not address the defendant McDowell's qualified immunity argument.

made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Adair v. Charter County of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006). Furthermore, "the policymaker for whose conduct the plaintiff seeks to hold the municipality liable must possess final authority to create official policy with respect to the action ordered." *Id.*

The plaintiffs' complaint does not identify any policy or custom of Monroe County which could arguably be linked to a violation of Mr. Gosnell's constitutional rights. Further, because there is no *respondeat superior* liability under § 1983, *Searcy v. Dayton*, 38 F.3d 282, 286 (6th Cir. 1994), Monroe county cannot be liable for an injury inflicted solely by its employees or agents. *Shehee*, 199 F.3d at 300. Additionally, the only evidence of record indicates an absence of frequent complaints similar to Mr. Gosnell's, an absence which belies any sort of policy or custom on the part of Monroe County encouraging the endangerment of prisoners housed in the MCJ. Therefore, summary judgment will be granted to defendants Monroe County and Watson and McDowell in their official capacities on the § 1983 claim.

**B.  Loss of Consortium Claim**

Mrs. Gosnell alleges that the defendants, through their violation of her husband's civil rights, are liable for her loss of consortium. An important element of a party's claim for loss of consortium in Tennessee is that the defendant must actually be liable for the injuries to the spouse. *See Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987) ("Although a husband's or wife's claim for loss of consortium will always be 'derivative' in the sense that the injuries to his or her spouse are an element and must be proved, the right

to recover for loss of consortium is a right independent of the spouse's right to recover for the injuries themselves."). Given that the plaintiffs have failed to carry their burden in their § 1983 claims, any claim for loss of consortium based upon those alleged civil rights violations must also fail. Therefore, to the extent that the loss of consortium claims might be based upon the § 1983 claims, summary judgment for the defendants will be granted with respect to Mrs. Gosnell's loss of consortium claims.

**C.     State Law Claims**

In light of the Court's ruling on the plaintiff's federal claims as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over the plaintiff's state law causes of action. 28 U.S.C. § 1367(c). Accordingly, plaintiff's remaining state law claims will be **DISMISSED without prejudice**.

**IV.     Conclusion**

For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 17] will be **GRANTED** and all § 1983 claims and any loss of consortium claims based upon the § 1983 claims will be **DISMISSED with prejudice**, while the remaining state law claims will be **DISMISSED without prejudice**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE