UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DENNIS GOSNELL and <br> DIANA GOSNELL, <br><br> Plaintiffs, <br><br> v. <br><br> MONROE COUNTY, <br> DOUG WATSON, in his official capacity, and <br> JOE McDOWELL, in both his official and <br> individual capacities, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 3:04-CV-573 <br> )        (VARLAN/GUYTON) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM OPINION

This civil rights action is before the Court on the plaintiffs' Motion for Reconsideration and Leave to File Plaintiff's Response to Defendant's Motion for Summary Judgment. [Doc. 27]. The plaintiffs request that the Court allow the plaintiffs to late file their attached response to the defendants' previously granted motion for summary judgment and for the Court to then reconsider the merits of defendants' motion. The defendants oppose plaintiffs' motion. [*See* Docs. 32, 33].

The Court has carefully considered the pending motion along with the plaintiffs' proposed response to the defendants' previously granted motion for summary judgment, as well as all other filings related to the previously granted motion for summary judgment. For the reasons set forth herein, the plaintiffs' motion [Doc. 27] will be **GRANTED in part**, to the extent that the Court has considered the plaintiffs' response to the defendants' motion for

summary judgment as if the response had been timely filed. However, the motion [Doc. 27] will be **DENIED in part** to the extent that, after reviewing the record in light of the plaintiffs' response [Docs. 28, 31] and the defendants' reply [Doc. 33], the Court finds that summary judgment in favor of the defendants is still appropriate.

## I.     Procedural Posture

Before discussing the points raised by the plaintiffs in their response, the Court will briefly summarize the procedural history relating to the defendants' motion for summary judgment. The defendants filed their motion for summary judgment [Doc. 17] on August 2, 2006. On August 15, 2006, the plaintiffs requested an extension of time to respond to the motion for summary judgment. [Doc. 20]. The Court granted the plaintiffs' request, giving them until September 14, 2006, to file a response. [Doc. 21]. On September 13, 2006, the plaintiffs filed a motion to continue the trial. [Doc. 23]. The plaintiffs' motion to continue was granted, and the trial was continued to April 17, 2007. [Doc. 24]. On January 23, 2007, the Court, still having received no response to the motion for summary judgment, nor a request for an extension of time from the plaintiffs, ruled on the pending motion for summary judgment, granted summary judgment in favor of the defendants, and dismissed the case. [Docs. 25, 26]. On January 24, 2007, the plaintiffs filed the instant motion to reconsider. [Doc. 27]. On January 31, 2007, the plaintiffs filed their response to the previously granted motion for summary judgment. [Docs. 28, 31]. On February 23, 2007, the defendants filed their opposition to the motion to reconsider and their reply to the plaintiffs' response to the motion for summary judgment. [Docs. 32, 33]. On February 28, 2007, plaintiffs filed their

reply to the defendants' response to their motion to reconsider, objecting because the defendants response was untimely. [Doc. 34]. The matter is now ripe for adjudication.

## II. Analysis

Initially, the Court will address the late filings on the part of both parties. The Court notes that the plaintiffs have late filed a response to the defendants' motion for summary judgment [Docs. 28, 31] and the defendants have late filed a response to the plaintiffs' motion for reconsideration. [Docs. 32, 33]. The Court has given due consideration to each of these late filed documents, and, in the interests of justice, the Court **ORDERS** that each of these documents be treated as if timely filed. Additionally, in the interests of justice, the Court will **GRANT in part** the plaintiffs' motion to reconsider to the extent that the Court has considered the plaintiffs' late filed response to the motion for summary judgment.

In addressing the plaintiffs' motion to reconsider, the Court will address the points raised by the plaintiffs in their response to the motion for summary judgment. Additionally, the Court also relies on the reasoning expressed in the Court's previous opinion granting summary judgment in favor of the defendants. [Docs. 25, 26].

The plaintiffs raise several arguments as to why summary judgment should not be granted. However, there is one threshold issue which the plaintiffs must establish before any of their other arguments need be considered. In order to succeed in their § 1983 claim, the plaintiffs must first show that Mr. Gosnell has suffered a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005). Even viewing the facts and drawing all inferences in the light most favorable

to the non-moving party as required, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the plaintiffs have not shown a constitutional violation. The plaintiffs raise three separate issues which they allege rise to the level of a constitutional violation: (1) overcrowding of the Monroe County Jail ("MCJ"); (2) failure to protect Mr. Gosnell from other inmates of the MCJ; (3) failure to provide adequate medical care to Mr. Gosnell. The Court will address each of these issues in turn.

**A.     Overcrowding of the MCJ**

Overcrowding in a prison setting is not itself a violation of the constitution. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *see also Owens v. Campbell*, 198 F.3d 246 (6th Cir. 1999). While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *See Rhodes*, 452 U.S. at 348; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). To allege a constitutional violation, the plaintiff must allege and present evidence that he was denied basic human needs such as food, warmth, or sanitation, or was otherwise subjected to cruel and unusual punishment by virtue of the alleged overcrowded conditions to justify relief. *See Wilson v. Seiter*, 501 U.S. 294, 298,(1991); *Rhodes*, 452 U.S. at 348. Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The record shows that Mr. Gosnell spent at least one night in the MCJ on the floor because there were not enough beds. [Doc. 30, Attachment 9 at p. 4]. The record also shows

that there were twenty-nine prisoners, including Mr. Gosnell, being housed in a cell block intended for twenty-four prisoners. [Doc. 30, Attachment 8 at p. 2]. Additionally, the MCJ was designed to house sixty-four inmates, but was actually housing eighty-five at the time in question. [*Id.*]. Additionally, after his injuries, Mr. Gosnell was placed in a small holding cell which had no bathroom facilities for approximately seven to eight hours, apparently because there was nowhere else he could be placed at the time. [Doc. 30, Attachment 7 at p. 12].

Based upon the evidence of record, the Court finds that the overcrowded conditions of the MCJ did not rise to the level of a constitutional violation. The plaintiffs have not set forth evidence showing that Mr. Gosnell was denied food or warmth. *Wilson*, 501 U.S. at 298; *Rhodes*, 452 U.S. at 348. The evidence does show that the plaintiff was placed in a cell without restroom facilities for several hours, but, given the limited duration, the Court does not find that this denial of access to restroom facilities rose to the level of a constitutional violation.[1] *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("The length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.").

---

[1] Additionally, the record shows that it was the policy of the MCJ for a guard to check with the inhabitant of the holding cell on a regular basis to see if the individual needed to use the restroom. [Doc. 33, Attachment 3 at p. 17].

Additionally, the plaintiffs did not include a claim based upon the overcrowded conditions of the MCJ in their complaint, and accordingly, the defendants did not have fair notice that the issue of overcrowding would form one of the bases of the plaintiffs' § 1983 action. *See Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) (holding that a complaint in a civil rights action must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests). Accordingly, the Court does not find that the overcrowded conditions at the MCJ amounted to cruel and unusual punishment and therefore did not rise to the level necessary to result in a constitutional violation.

**B.**     **Failure to Protect Mr. Gosnell From Other Inmates of the MCJ**

With respect to the plaintiffs' failure to protect claim, the Court previously ruled that the plaintiffs had not shown that defendant McDowell, in his individual capacity, had ignored a substantial risk of harm to Mr. Gosnell, nor had the plaintiffs shown that defendant McDowell could be held liable under a theory of supervisory liability. [Doc. 25 at 7-9]. After reviewing the record in light of the plaintiffs' response, the Court's decision has not changed. The record does indicate that Mr. Mason had a history of prior incidents. [Doc. 30, Attachment 8 at p. 9]. However, the record also shows that those incidents consisted of Mr. Mason being "loud and obnoxious." [*Id.*]. There is no evidence of record to indicate that anyone was on notice that Mr. Mason posed a threat of physical violence to any of the inmates, including Mr. Gosnell. In the absence of such evidence, the Court cannot find that defendant McDowell ignored a substantial risk of harm to Mr. Gosnell. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (holding that, in order to succeed on a failure to protect

claim, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate). Nor can the Court find that defendant McDowell is liable under a theory of supervisory liability, as there is no evidence that defendant McDowell encouraged or directly participated in the misconduct, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), nor that he tacitly authorized the misconduct. *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).

With respect to the Monroe County defendants, the plaintiffs must show that a policy or custom attributable to the governmental entity resulted in a violation of Mr. Gosnell's constitutional rights. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). There is no evidence of record to support such a claim. There is absolutely no evidence to support the theory that Monroe County has a policy or custom of exposing inmates to risk of physical harm from other inmates. As stated earlier, there is no evidence anyone knew Mr. Mason presented a threat of physical violence to the other inmates, and once it was realized that Mr. Mason did pose a threat to Mr. Gosnell, Mr. Mason was placed in a different cell. Had Mr. Mason repeatedly attacked other inmates, then the plaintiffs might be able to show that the Monroe County defendants had a policy or custom of failing to protect the safety of the inmates of the MCJ, but this single incident is not enough to support such a finding.

Therefore, the Court finds that the plaintiffs have not raised a question of fact with respect to the plaintiffs' failure to protect claim. Accordingly, summary judgment was properly granted in favor of the defendants.

## C. Failure to Provide Adequate Medical Care

In order to state a claim for failure to provide adequate medical care the plaintiff must establish both objective and subjective components.

> To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk.

*Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citations omitted). Additionally,

> [w]here the seriousness of a prisoner's need for medical care is obvious even to a lay person, this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test. However, if the need involves . . . non-obvious complaints of a serious need for medical care, the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.

*Id.*

Mr. Gosnell described his injuries as consisting of a cut lip, loose teeth, a face that "felt like mush," possible broken ribs, a "messed up" nose, and possible kidney problems. [Doc. 30, Attachment 7 at p. 8]. The reports made by various guards at the MCJ indicated that Mr. Gosnell had a cut lip, scratches on his arms, and slight bruising. [Doc. 30, Attachments 2 - 6]. Mr. Gosnell has also indicated that his fellow inmates told him that he looked like he needed medical attention. [Doc. 30, Attachment 7 at p. 12]. However, hearsay evidence may not be considered on summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), so Mr. Gosnell's reports

8

of what the inmates told him may not be considered, and there are no statements from any of the other inmates of the MCJ in evidence. The plaintiffs have also failed to provide any medical records or any other evidence of the extent of Mr. Gosnell's injuries.

Based upon the evidence of record, the Court finds that the only obvious sign of Mr. Gosnell's injuries was his cut lip. Mr. Gosnell's other injuries were all non-obvious complaints, so the plaintiffs were required to provide medical evidence to support their claim. No such medical evidence has been provided. Therefore the plaintiffs cannot satisfy the objective component of their claim.

However, assuming arguendo that Mr. Gosnell had satisfied the objective component, the plaintiffs still cannot satisfy the subjective component. There is absolutely no evidence that defendant McDowell in his personal capacity was aware of Mr. Gosnell's injury and refused to provide Mr. Gosnell medical care. Mr. Gosnell's injuries occurred on the evening of May 14, 2004, a Friday. At that time, defendant McDowell did not work on Saturdays and Sundays [Doc. 30, Attachment 9 at p. 10], so he would not have learned about Mr. Gosnell's injuries until Monday, May 16, 2004, after Mr. Gosnell had been released from the MCJ. Therefore defendant McDowell could not be directly liable for failing to provide Mr. Gosnell with medical attention.

Nor is there sufficient evidence to support a finding that defendant McDowell was liable under a theory of supervisory liability, as there is no evidence that defendant McDowell encouraged or directly participated in the misconduct, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), nor that he tacitly authorized the misconduct. *Doe v. City of*

9

*Roseville*, 296 F.3d 431, 439 (6th Cir. 2002). Defendant McDowell was simply too far removed from the incident to be liable in his individual capacity. Nor is there evidence that he failed to provide proper training, because the record shows that the guards of the MCJ received first aid training. [*Id*.].

With respect to the Monroe County defendants, the plaintiffs have also failed to show that a policy or custom attributable to the governmental entity resulted in a violation of Mr. Gosnell's constitutional rights. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). There is absolutely no evidence that it was the policy of Monroe County that the medical needs of prisoners should be ignored. Rather, the record shows that the policy of the MCJ was that guards had some discretion in determining whether an inmate needed medical attention. [Doc. 30, Attachment 10 at p. 1]. The record also shows that the guards of the MCJ received first aid training. [*Id*.]. Therefore, the record shows that it is the policy of Monroe County that the guards at the MCJ should use their discretion in evaluating the medical needs of the inmates and should contact a nurse or an ambulance in the event of serious injuries. Given the non-obvious nature of the majority of Mr. Gosnell's alleged injuries, it was not an abuse of the guards' discretion to treat Mr. Gosnell's only obvious injury, his cut lip. And even if the guards did violate Monroe County policy by failing to obtain further medical aid, the Monroe County Defendants still would not be liable because the principle of *respondeat superior* does not apply in § 1983 actions. *Searcy v. Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

Therefore, the Court finds that the plaintiffs have not raised a question of fact with respect to the plaintiffs' failure to provide adequate medical care claim. Accordingly, summary judgment was properly granted in favor of the defendants.

**D.**   **Loss of Consortium Claim and State Law Claims**

Given that the Court finds that the grant of summary judgment was appropriate with respect to the plaintiffs § 1983 action, the Court, for the reasons expressed in its previous opinion, similarly finds that it was appropriate to dismiss the plaintiffs loss of consortium claim and state law claims.

**III.**   **Conclusion**

For the reasons set forth herein, as well as the reasons set forth in the Court's previous opinion, the Court finds that it was appropriate to grant the defendants' motion for summary judgment. Accordingly, the plaintiff's motion to reconsider [Doc. 27] will be **GRANTED in part** to the extent that the Court has considered his response to the defendant's motion for summary judgment. However, the plaintiff's motion [Doc. 27] will be **DENIED in part** to the extent that, after considering all of the evidence of record, the Court finds that it was appropriate to grant summary judgment in favor of the defendants.

ORDER ACCORDINGLY.

    s/ Thomas A. Varlan
    UNITED STATES DISTRICT JUDGE